IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| POWER CITY ELECTRIC INC., | ) | |
| | ) | No. 35676-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | UNPUBLISHED OPINION |
| OF LABOR AND INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — In a previous opinion, we directed the Board of Industrial

Insurance Appeals (BIIA) to enter more detailed findings explaining its decision on an

appeal by Power City Electric (PCE) contesting four safety violations assessed against

PCE for a project in Pasco.  Having received the findings, we now affirm.

FACTS

We previously summarized the facts of this case involving work done on a Pasco

street:

> PCE was hired to move the power cables and had to dig a hole on the side
> of Court Street to do so.  A Department of Labor and Industries (DLI)
> compliance officer, Reynaldo Gomez, was driving by the scene when he
> noticed only the helmeted head of a worker in the hole.  Concerned about
> the depth of the dig, he stopped to investigate.
>    Two men stepped out of the excavation by use of a notch dug into the
> shallower south side of the hole.  Dirt from the dig was piled immediately

next to the deep end of the trench.[1]  The excavation measured about six feet wide by ten feet long.  A one foot section on the north side of the dig was measured to be six feet deep.  The depth ranged from 30 to 48 inches in the remainder of the dig.  Gomez graded the sandy soil in the excavation as Type C—unstable.  There were no measures in place to prevent collapse of either the hole or of the spoils pile.  Photographs of the scene were taken.

The two workers had been clearing fiber optic lines by shovel in the shallower side of the trench.  Their work zone was within 3.5 feet of the six foot deep section where the backhoe was excavating.

DLI issued four major infraction notices, fining PCE $7,200.  The Industrial Appeals Judge (IAJ) heard testimony from Mr. Gomez and the PCE foreman, Julian McCarthy.  The IAJ upheld the citation for failure to provide a safe means of ingress and egress, but rejected the other citations.  Both PCE and DLI appealed.

*Power City Electric v. Washington State Dep't of Labor and Indus.*, No. 35676-1-III, slip

op. at 1-2 (Wash. Ct. App. Nov. 15, 2018) (*Power City* I) (unpublished) http://www

.courts.wa.gov/opinions/pdf/356761.pdf.

On appeal, the BIIA found for DLI and concluded that there were four serious

violations; it imposed $7,200 in total fines, although it rearranged the assessment

amounts on the individual violations.  Specifically, the BIIA determined that there was no

system to prevent cave-ins, there was no safe means of ingress or egress, the spoils pile

was too close to the excavation, and PCE failed to remove its employees from a

hazardous location.

PCE appealed to this court.  A panel heard argument and then issued an opinion

remanding the case to the BIIA for additional findings.  We retained jurisdiction.

---

[1] This is referred to as the "spoils pile."

No. 35676-1-III
*Power City Elec. v. Dep't of Labor & Indus.*

The additional findings were entered and the parties filed supplemental briefs addressing them. A panel then considered the case without hearing further argument.

ANALYSIS

PCE argues that the findings do not support the four violations and that the supplemental findings did not answer this court's questions. The purpose of the example questions propounded in our last opinion was to seek sufficient detail from the BIIA to understand its reasoning. For better or for worse, that was accomplished. Accordingly, we now address the merits of PCE's appeal after first considering the governing standards.

This court reviews a BIIA decision based on the record before the Board. *Frank Coluccio Constr. Co. v. Dep't of Labor & Indus.*, 181 Wn. App. 25, 35, 329 P.3d 91 (2014). BIIA findings are conclusive if supported by substantial evidence on the record as a whole. *Id.*; RCW 49.17.150. "'Substantial evidence' is evidence in sufficient quantity to persuade a fair-minded person of the truth of the declared premise." *Coluccio*, 181 Wn. App. at 35. The appellate court views the evidence in the light most favorable to the party that prevailed below. *Id.* Courts construe workplace "statutes and regulations liberally to achieve their purpose of providing safe working conditions for workers in Washington." *Id.* at 36. Accordingly, courts give "substantial weight to an agency's interpretation within its area of expertise and uphold that interpretation if it

3

reflects a plausible construction of the regulation and is not contrary to legislative intent."

*Id.*

The Washington Industrial Safety and Health Act of 1973 (WISHA) is found in chapter 49.17 RCW. That chapter distinguishes between serious violations and violations not of a serious nature. RCW 49.17.180(2), (3). An employer cited for a serious violation of an administrative rule adopted pursuant to chapter 49.17 RCW *shall* be assessed a civil penalty up to $7,000. RCW 49.17.180(2). An employer cited for a non-serious violation *may* be assessed a similar penalty, or none at all. RCW 49.17.180(3). A WISHA violation is serious if "there is a substantial probability that death or serious physical harm could result from a condition . . . unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." RCW 49.17.180(6). The violation is non-serious if the employee is not endangered to the level of a serious violation. RCW 49.17.180(3).

The previous opinion also addressed the statutory and regulatory requirements for establishing a serious violation:

> In order to establish a serious violation of state worker safety standards, RCW 49.17.180 requires proof that "death or serious physical harm could result" from an existing condition. With respect to construction work, state safety standards are set out in chapter 296-155 WAC. Washington adopted the federal standards governing the role of likelihood of harm in assessing a violation of the state safety standards in *Adkins v. Aluminum Company*, 110 Wn.2d 128, 750 P.2d 1257, 756 P.2d 142 (1988). A violation of safety standards is established when an employee has "access" to the unsafe condition; access is established when DLI shows "a reasonable

No. 35676-1-III
*Power City Elec. v. Dep't of Labor & Indus.*

> predictability that, in the course of their duties, employees will be, are, or have been in the zone of danger." *Id*. at 147 (emphasis omitted). *Accord*, *Mid Mountain v. Labor & Indus.*, 136 Wn. App. 1, 5, 146 P.3d 1212 (2006) (applying *Adkins* standard to an excavation setting).

*Power City* I, No. 35676-1-III, slip op. at 3. All WAC provisions at issue in this case were adopted pursuant to chapter 49.17 RCW. *See* WAC 296-155-657 Credits; WAC 296-155-655 Credits.

The regulations found in WAC 296-155 Part N govern excavations. The regulations apply "to all open excavations made in the earth's surface." WAC 296-155-650(1). An excavation is "Any person-made cut, cavity, trench, or depression in the earth's surface, formed by earth removal." WAC 296-155-650(2). The construction project here was an excavation because it involved removing earth to create a cavity. *Id*.

With these standards in mind, we turn to the four violations at issue.

*Danger of Collapse*

PCE argues that there was no serious violation because the excavation did not exceed safety limits and the employees were not working close to the deep end. The record supports the contrary conclusion drawn by the BIIA.

At issue here is the physical nature of the excavation. An employer must implement a system to protect employees working in an excavation from a cave-in unless (i) an excavation is made entirely in stable rock, or (ii) an excavation is less than four feet deep and a competent person determines there is no indication of a potential cave-in.

5

WAC 296-155-657(1)(a)(i)-(ii). A protective system is a measure designed to protect employees from cave-ins. WAC 296-155-650(2). A cave-in is the movement of a mass of earth from the side of an excavation or under certain protective measures that could cause injuries to workers in an excavation. *Id.* Even if only a portion of an excavation is over four feet deep, and employees are not working in that portion of the excavation, § 657(1)(a) still applies. *See Mid Mountain Contractors, Inc. v. Dep't of Labor and Indus.*, 136 Wn. App. 1, 6, 146 P.3d 1212 (2006) ("It is irrelevant that [appellant's] employees were in a portion of the trench less than four feet in depth.").

The testimony led the BIIA to find that the hole was six feet in width and ten feet in length, with a maximum depth of six feet. The walls were almost vertical and the soil was "Type C"—the most unstable soil. Supp. Findings of Fact (SFF) at 2. A four foot high spoils pile sat immediately adjacent to the deepest side of the excavation. *Id*. The BIIA likened this case to *Mid Mountain* and determined that given the short length of the trench, even while in the shallower side, the workers were adjacent to the deep part with but a single step. SFF at 1. It concluded that the worker "had access to the zone of danger within a reasonable predictability." *Id*. at 1-2.

In *Mid Mountain*, a portion of a trench was dug to the depth of four feet six inches. 136 Wn. App. at 3. While most of the walls were sloped, the southern wall adjacent to the deep end was not sloped. *Id.* There is no indication in the opinion how long the trench was. The employer challenged the violation citation on the basis that the

employees were not working at the deep end of the trench. *Id.* at 5-6. This court

affirmed, agreeing with the BIIA that the employee working in the trench had *access* to

the zone of danger even though he was not working at the deep end. *Id.* at 5-7.

Similarly here, the workers were within a single step of the deep end of the

trench. The depth exceeded four feet and there was no protective device to prevent a

cave-in of the Type C soil in violation of WAC 296-155-657(1)(a)(i)-(ii). The workers

were within the zone of danger recognized by *Mid Mountain*. The finding is supported

by substantial evidence and the finding supports the conclusion that the workers were

close enough to the dangerous area to be within the zone of danger.

The BIIA did not err in concluding that the excavation was a serious violation of

WAC 296-155-657(1)(a)(i)-(ii).

*Ingress/Egress*

PCE argues that the dimensions of the dig made it an excavation, not a trench, and

therefore not subject to the ingress/egress standards set forth in the regulation at issue.

This hole was a "trench" for purposes of the regulation.

The shallow end of the excavation was 30 inches deep at its most shallow; the

employees used a notch cut in the side of the short wall to step in and out of the dig. SFF

3 at 2; Clerk's Papers (CP) at 162. A trench is "A narrow excavation in relation to its

length made below the surface of the ground." WAC 296-155-650(2). "*In general*, the

depth is greater than the width." *Id.* (emphasis added). For trenches, the regulations

require: "A stairway, ladder, ramp or other safe means of egress must be located in trench excavations that are 4 feet (1.22 m) or more in depth."  WAC 296-155-655(3)(b).

PCE relies on the fact that the maximum depth of the dig was the same as the width—six feet.  Because of this, it argues that the depth was not greater than the width and, thus, there was no trench requiring the specific means of ingress/egress.  This argument, however, ignores the first sentence of the definition that a trench is narrow "in relation to its length."  While "in general" the depth exceeds the width, that description does not modify the definition of a trench—length exceeds width.

The BIIA correctly determined that this dig constituted a trench built in unstable soil.  Since the dig exceeded four feet in depth, it was required to have a stairway, ladder, or other safe means of entering and exiting the dig.  WAC 296-155-655(3)(b).  Those were lacking.  This error, too, constituted a serious violation of WISHA.

*Spoils Pile*

The spoils pile, reaching a height of four feet, was found to be located immediately adjacent to the deep end of the excavation.  SFF 2, 3, 4 at 2-3.  There was no retaining device keeping the pile from the hole.  SFF 6 at 3.  PCE does not challenge this factual finding, but argues that the employees were not observed working at that end of the excavation.

Employers "must protect employees from excavated or other materials or equipment that could pose a hazard by falling or rolling into excavations."  WAC 296-

8

155-655(10)(b). An employer satisfies this requirement by keeping excavated materials at least two feet from the excavation, or by using retaining devices to prevent such materials from falling into an excavation. *Id.*

The spoils pile was immediately adjacent to the deep end of the trench and contributed to that end constituting the "zone of danger." It also was a danger as a potential trigger to the unstable soil collapsing the trench. Thus, whether the workers were working immediately adjacent to the pile is less of a concern than the fact that it created a dangerous condition for the workers inside the trench.

The spoils pile was not at least two feet from the excavation, and there was no retaining device in place to prevent the spoils from falling into the excavation. Therefore, the conditions of the excavation site here violated the requirements of WAC 296-155-655(10)(b). The evidence supports the finding of a serious violation.

*Failure to Remove Employees*

Lastly, PCE contends that it was not established that it acted with knowledge of the dangerous conditions and could not, therefore, be held liable. Because its supervisors were on scene and the violations were visible to them, PCE had knowledge of the violations. PCE's failure to remove the workers properly subjected it to liability.

Whenever a hazardous condition can be reasonably anticipated, WAC 296-155-655(11)(a) requires that a competent person inspect an excavation for hazards, including the possibility of cave-ins. When the competent person finds evidence of potential cave-

ins or other hazardous conditions, the employer must remove employees from the hazardous area until appropriate precautions are implemented. WAC 296-155-655(11)(b). A "competent person" is one "who can identify existing or predictable hazards in the surroundings that are unsanitary, hazardous, or dangerous to employees" and who is authorized "to take prompt corrective measures." WAC 296-155-650(2).

An employer has constructive notice of a violation when it is readily observable or in a conspicuous location where the employees are working. *Erection Co. v. Dep't of Labor & Indus.*, 160 Wn. App. 194, 207, 248 P.3d 1085 (2011). Here, supervisor McCarthy had been at the site until shortly before compliance officer Gomez inspected it. Acting supervisor Schelske was present the entire day and was sitting in the trackhoe next to the trench when Gomez visited.

The BIIA determined that depth of the excavation and the presence of the spoils pile immediately adjacent to the dig were obvious hazards visible to the two supervisors and they did not take steps to remove the employees. SFF 4, 6 at 2-3. The supervisors also knew that the two men were working in the trench and knew or should have known that they had to enter and leave it via the notch in the side. SFF 5 at 3; CP at 162. From these facts, the BIIA also found that PCE had knowledge of the four violations. SFF 6 at 3.

The evidence supported each factual determination. In turn, the findings supported the determination that PCE should have known about each violation and failed

No. 35676-1-III
*Power City Elec. v. Dep't of Labor & Indus.*

to act to protect the workers. Substantial evidence supported the conclusion that PCE

was liable.

Accordingly, the judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Siddoway, J.

11